**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

Rebecca Arndt, Nicole Baldwin,
Cathy Buckley, Stacey Clark
Donya Davis, Julie Garrett
Carolyn Graves, Samantha Lembergs
Jennifer Lewis, Geraldine Pring
Magdalena Santos, and
Terry Thrumston,

      Plaintiffs

v.

City of Colorado Springs,

      Defendant

_____

**COMPLAINT**

_____

      The Plaintiffs, Rebecca Arndt, Nicole Baldwin, Cathy Buckley, Stacey Clark,

Donya Davis, Julie Garrett, Cari Graves, Samantha Lembergs, Jennifer Lewis,

Geraldine Pring, Magdalena Santos, and Terry Thrumston, allege the following:

**Introduction**

1.     This is an action brought on behalf of twelve Colorado Springs Police Officers

pursuant to 42 U.S.C § 1983 to remedy violations of the Plaintiffs' right to be free from

unequal treatment based upon sex and age under the Equal Protection Clause of the

Fourteenth Amendment of the United States Constitution and violations of Plaintiffs'

right to due process under the Due Process Clause of the Fourteenth Amendment of

the United States Constitution.

1

**Jurisdiction and Venue**

2.      The Court has jurisdiction over the subject matter of this civil action arising under

the United States Constitution pursuant to 28 U.S.C. § 1331.

3.       Venue is proper in the United States District Court for the District of Colorado

pursuant to 28 U.S.C. § 1391 because all or a substantial part of the acts or omissions

giving rise to this cause of action took place in this judicial district.

**Exhaustion of Administrative Remedies**

4.      The Plaintiffs have filed charges of discrimination with the United States Equal

Employment Opportunity Commission in Denver, Colorado alleging age and sex

discrimination.

5.      At such time as the Plaintiffs receive Notices of Right to Sue they will  move to

amend the Complaint to allege violations of Title VII of the Civil Rights Act of 1964 and

the Age Discrimination in Employment Act of 1967.

**Parties**

6.      Rebecca Arndt is a forty-eight year old female police officer who has been

employed by the Colorado Springs Police Department for sixteen years.

7.      Officer Arndt has successfully worked as a Patrol Officer, a Training Officer, a

Detective in the Crimes Against Children Unit, and an Investigator for the Background

Cadre.

8.      Officer Arndt is currently assigned to the Sand Creek Division as a Patrol Officer.

9.      Officer Rebecca Arndt has received multiple official Letters of Appreciation from

the Chiefs of Police for Colorado Springs and other government agencies for her

service. Officer Arndt is a recipient of the American Eagle Award; she has received the

2

Award for A Commitment to Excellence twice. Officer Arndt has received 18

Commanders Commendations and one Written Commendation.

10.      Nicole Baldwin is a forty-six year old female police officer who has been

employed by the Colorado Springs Police Department for ten years.

11.      Officer Baldwin has successfully worked as a Patrol Officer, a School Resource

Officer, and a detective in the Sex Crimes Unit.

12.      Officer Baldwin currently works in the Stetson Hills Division as a Patrol Officer.

13.      Officer Nicole Baldwin has received official letters of appreciation from the Chiefs

of Police during her tenure with the Colorado Springs Police Department. She has been

awarded 8 Commanders Commendations and one Written Commendation from the

Police Department. Officer Baldwin has been  the recipient of the Award for A

Commitment to Excellence.

14.      Catherine Buckley is a fifty year old female police lieutenant who has been

employed by the Colorado Springs Police Department for twenty-one years.

15.      Lieutenant Buckley has successfully worked as a Patrol Officer, including as a

Training Officer, a detective with the Bureau of Alcohol Tobacco and Firearms, Firearm

Interdiction Task Force, an Airport Police Officer, a Police Training Officer, a Patrol

Sergeant, a Sergeant with the Neighborhood Policing Unit, a Sergeant with the

Community Impact Team, a Patrol Lieutenant, and a Public Information Officer

(Lieutenant) for the Colorado Springs Police Department.

16.      Lieutenant Buckley currently works in the Professional Standards Division as the

Public Information Officer.

17.      Lieutenant Buckley has received the  Department Commendation for Excellence

in 2013 for coordinating emergency services during the Waldo Canyon Fire. She has received at least 15 Commanders Commendations and 2 Written Commendations. She has received the American Eagle Award and the Create Leadership Award.

18.     Stacey Clark is a forty year old female Police Officer who has been employed by the Colorado Springs Police Department for thirteen years.

19.     Detective Clark has successfully worked as a Detective in the Property Investigations Unit, a Patrol Officer, and an Investigator for the Colorado Springs Police Department.

20.     Detective Clark currently works in the Sand Creek Division as a detective.

21.     Detective Clark has received the Distinguished Service Award and the Life Saving Award from the Colorado Springs Police Department. Detective Clark has received many official Letters of Appreciation from the Chiefs of Police for her service in the Colorado Springs community. Detective Clark has received 15 Commanders Commendations and one Written Commendation. In addition, she has been honored as Employee of the Month twice.

22.     Donya Davis is a forty-nine year old Police Detective who has been employed by the Colorado Springs Police Department for seventeen years.

23.     Detective Davis has successfully worked as a Patrol Officer, a Detective in the Financial Crimes Unit, a School Resource Officer, and a Detective in the Crimes Against Children Unit.

24.     Detective Davis currently works in the Crimes Against Children Unit as a detective for the Colorado Springs Police Department.

25.     Detective Donya Davis received the Award for A Commitment to Excellence in

2011 and 2012. Detective Davis has been recognized as the Officer of the Month. She has received 15 Commanders Commendations and one Written Commendation. Detective Davis has received multiple certificates of appreciation for her service.

26.     Julie Garrett is a fifty-two year old female Police Officer who has been employed by the Colorado Springs Police Department for twenty-four years.

27.     Officer Garrett has successfully worked as a Patrol Officer, an Intelligence Detective in the Vice, Narcotics, and Intelligence Unit, a School Resource Officer, a Motorcycle Officer, a Master Patrol Officer, and a detective in the Theft Auto Burglary Unit for the Colorado Springs Police Department.

28.     Officer Garrett is assigned to the Gold Hill Substation as a Patrol Officer.

29.     Officer Julie Garrett has been the Employee of the Month and received the Distinguished Service Award from the Colorado Springs Police Department. Officer Garrett has received 8 Commanders Commendations, 1 Written Commendation and the Award for A Commitment to Excellence.

30.     Carolyn Graves is a forty-six year old female police officer who has been employed by the Colorado Springs Police Department for twenty-two years.

31.     Lieutenant Graves has successfully worked as a Lieutenant in Patrol, a Sergeant in Patrol, a Patrol Officer, a School Resource Officer, a Patrol Officer in a Neighborhood Policing Unit, a Sergeant in Community Relations, and a Director of a Domestic Violence Enhanced Response Team for the Colorado Springs Police Department.

32.     Lieutenant Graves currently works in the Stetson Hills Division as a Police Lieutenant.

33.     Lieutenant Cari Graves has received the Patrol Division Leadership Award.

Lieutenant Graves received the Colorado Springs Police Department Eagle Award for Leadership. She has received 5 Written Commendations and 8 Commanders Commendations. She has been recognized as Officer of the Month on multiple occasions.

34.     Samantha Lembergs is a forty-one year old female police officer who has been employed with the Colorado Springs Police Department for seventeen years.

35.     Detective  Lembergs has successfully worked as a Patrol Officer, a detective in the Sex Crimes/Crimes Against Children Unit, and as Police Training Officer in Patrol and Investigations.

36.     Detective Lembergs currently works as a Detective in the Crimes Against Children Unit for the Colorado Springs Police Department.

37.     Detective Samantha Lembergs received the American Eagle Award in 2009, 2012, and 2015. She has received the Commitment to Excellence Award. She has received 19 Commanders Commendations and 3 Written Commendations.

38.     Jennifer Lewis is a forty-three year old female police officer who has been employed with the Colorado Springs Police Department for seventeen years.

39.     Sergeant Lewis has successfully worked as a Patrol Officer, a Patrol Sergeant, a Patrol Training Officer in Evidence, a Neighborhood Resource Officer, and a Decoy in the Crimes Against Children Unit for the Colorado Springs Police Department.

40.     Sergeant  Lewis currently works in the Sand Creek Division as a Patrol Sergeant.

41.     Sergeant Jennifer Lewis has received the Award for A Commitment to Excellence.  She has received a Leadership Award and been recognized as Officer of the Month. Sergeant Lewis has received 3 Written Commendations and 5 Commanders

Commendations.

42.     Geraldine Pring is a fifty year old female police officer who has been employed with the Colorado Springs Police Department for twenty-nine years and as a sworn police officer for ten years.

43.     Officer Pring has successfully worked as a Patrol Officer, an Investigator for the Special Victims Unit, a Detective for the Domestic Violence Unit, a Crisis Negotiator, and serves on the Police Honor Guard for the Colorado Springs Police Department.

44.     Officer Pring currently works as a Patrol Officer.

45.     Officer Geraldine Pring, known by her Police colleagues as the Victim Whisperer, received the Medal of Valor in 2012 for her service during the Waldo Canyon Fire. In 2012 Officer Pring received the Create Certificate of Appreciation. Officer Pring has been the recipient of the American Eagle Award. She has received 9 Commanders Commendations and one Written Commendation.

46.     Magdalena Santos is a fifty year old female police officer who has been employed with the Colorado Springs Police Department for twenty-three years.

47.     Lieutenant Santos has successfully worked as a Patrol Officer, a Patrol Sergeant, a Patrol Lieutenant, an Officer with the Neighborhood Policing Unit, an Officer with the Training Academy, a Sergeant with the Sex Crimes Unit, and as a Lieutenant for the Colorado Springs Police Department.

48.     Lieutenant Santos currently works in the Professional Standards Division as the Head of the Internal Affairs Section for the Colorado Springs Police Department.

49.     Lieutenant Magdalena Santos has received 6 Written Commendations and 10 Commanders Commendations. Lieutenant Santos received the Award for A

Commitment to Excellence and a Leadership Award.  She has received multiple official Letters of Appreciation and Certificates of Appreciation for her service.

50.     Terry Thrumston is a forty-nine year old female police officer who has been employed with the Colorado Springs Police Department for twenty-three years.

51.     Detective Thrumston has successfully worked as a Patrol Officer and as a Detective for the Colorado Springs Police Department.

52.     Detective Thrumston currently works as a detective in the Crimes Against Children Unit, Special Victims Unit.

53.     Detective Terry Thrumston is a Medal of Valor recipient and has been honored with the highly selective 100 Club Award. She has received 2 Written Commendations and 11 Commanders Commendations. Detective Thrumston earned the American Eagle Award in 2012 and 2014 and has received numerous Certificates of Appreciation from the Police Department.

54.     The Defendant, City of Colorado Springs, is a home rule city in the State of Colorado.

55.     The City of Colorado Springs established and operates the Colorado Springs Police Department under the authority of Section 5-10 of its City Charter.

56.     The City of Colorado Springs authorizes the Chief of Police to act as the final policy maker concerning the terms and conditions of employment for police officers.

### General Allegations

57.     Each Plaintiff is qualified for her position with the Colorado Springs Police Department.

58.     The Colorado Springs Police Department evaluates the job performance of each

Plaintiff semi-annually.

59.     Each of the Plaintiff's performance is currently rated as  satisfactory or better by her supervisor.

60.     Each Plaintiff is physically fit.

61.     Each Plaintiff works out multiple times per week performing aerobic exercise such as running, strength training, or kick boxing.

62.     None of the Plaintiffs have ever failed to perform or been unable to perform any of her duties, including making a forcible arrest, because of inadequate upper body or trunk strength.

63.     None of the Plaintiffs have ever failed to perform or been unable to perform any of her duties, including making a forcible arrest, because of inadequate running speed.

64.     Each Plaintiff is physically capable of making a forcible arrest.

**The Policy**

65.     In December, 2013 Peter Carey, the Chief of Police for the Colorado Springs Police Department, adopted a mandatory physical standards testing program (hereafter referred to as PAT policy or program) for all police officers.

66.     The announced purposes of the PAT policy, which was contained in General Order 1915, was to create a "culture of fitness," reduce work related injuries and increase officer longevity in the police force.

67.     Under the PAT policy all police officers were required to pass a physical abilities test (PAT) during the fourth quarter of 2014.

68.     Under the mandatory PAT testing program after 2014 police officers are required to pass the PAT once per calendar year.

69.     According to the policy adopted by the Department, police officers who do not pass the PAT are placed on light duty (with loss of responsibility, status and compensation), and subjected to discipline in the form of  a Performance Improvement Plan (PIP), and given six months to pass the PAT.

70.     According to the policy adopted by the Department, after six months the Colorado Springs Police Department will either require officers who do not pass the PAT to undergo a fit for duty evaluation or recommend the termination of their employment.

71.     The tests were first administered in October, November, and the first weeks of December in 2014.

72.     On December 15, 2014 the Colorado Springs Police Department adopted a policy punishing officers who failed the PAT test and imposing consequences for failing the PAT test, which were humiliating to the Plaintiffs.

73.     The punitive consequences of failing to pass the PAT test were unrelated to the announced purposes for administering the test and did not serve any important governmental objective. The punitive consequences included taking away from the officer her right to wear the uniform of the Colorado Springs Police Department or wear any insignia identifying her as a police officer.

74.     Other punitive consequences of failing to pass the PAT test included taking away the officer's eligibility to work overtime, to work extra duty, act as a Training Officer, to receive increases in pay, or to apply for transfer or promotion.

**Selection of Individual Tests and Establishment of Cut-Off Scores by The Colorado Springs Police Department**

75.     The PAT test adopted by the Colorado Springs Police Department is comprised of four individual parts: Sit Ups, Push Ups, The Illinois Agility Run, and the Beep Test.

76.     Each officer must achieve a minimum score of twenty (20) points to pass the PAT test.

77.     PAT scoring is based on the following scoring scale: Push-ups and sit-ups are timed for one minute with a possible score of 8 points for each, The Beep Test is measured in trips (20 meter lengths) completed with a pace set by an electronic recording and a possible score of 8 points, and The Illinois Agility Run is a timed running course with a possible score of 8 points.

78.     The individual tests are not tests of an officer's ability to perform essential job functions.

79.     The PAT tests are purportedly designed and administered only to be potential predictors of performance.

80.     Each individual PAT test measures a specific aspect of physical fitness, e.g. strength or cardiovascular fitness and can be "passed" by achieving a minimum score.

81.     The Colorado Springs Police Department considered ten individual tests for inclusion in the PAT test: Illinois Agility Run, Agility Ladder, Push-Ups, Side Steps, Sit and Reach, 300 meter Run, 1.5 mile run, BEEP test, Plank Test, and Sit-Ups.

82.     After evaluating the tests, specifically to compare a female officer's ability to perform as a percentage of a male officer's ability to perform on each test, the Colorado Springs Police Department selected the BEEP test, the Illinois Agility Test, Push-Ups and Sit-Ups to comprise the PAT.

83.     At the time the individual tests were selected by the Colorado Springs Police

11

Department the Department knew, based on its own expert's study of the issue, that female officers' scores on the tests on average were only a percentage of the male officers' scores. For example, female officers' average scores on the Push-Ups test were 63.51 percent of the average scores for male officers. Female officers' average scores on the BEEP test were 82.15 percent of the average scores for male officers.

84.     Three out of four of the individual tests selected by the Colorado Springs Police Department were tests in which female officers' scores, as a percent of male officers' scores, were known by the Colorado Springs Police Department to be between ten percent and thirty-five percent lower than male officers' scores.

85.     Men and women have different physiological characteristics, which result in a different physical ability to perform on three of the four physical abilities tests selected by the Colorado Springs Police Department.

86.     In order to accurately measure physical fitness of a group comprised of men and women of different ages, scores on fitness tests must be normed for sex and age.

87.     If the important governmental objective to be achieved by the policy of requiring PAT testing was to create a "culture of fitness" by improving cardiovascular fitness of Colorado Police Department officers, then different cut-off scores normed for different age groups and sexes should have been established.

88.     Establishing a single cut-off score for all officers regardless of age or sex did not advance or improve cardiovascular fitness for the great majority of officers who are either male or under forty years old.

89.     The cut-off scores were set at a level so that virtually all male officers could pass the test.

12

90.     In fact, of 549 male officers tested only 12 male officers, or two percent, failed to pass the PAT.

91.     The cut off scores were set at a level that virtually all officers under forty could pass the test.

92.     In fact, of 621 officers under forty tested only 3 officers under forty, or approximately one half of one percent, failed to pass the PAT.

93.     The decision to adopt a single cut-off score for all ages and genders resulted in thirty-eight percent of women officers over forty not passing the PAT.

94.     Since cut-off scores were set to eliminate or fail the officers scoring worse than one standard deviation below a mean achieved on each test, the Colorado Springs Police Department knew that the group failing the PAT test would be disproportionately women over forty before it enacted the policies disciplining and potentially terminating the employment of police officers who failed the PAT.

95.     Colorado Springs is the home of the United States Olympic Committee, the Olympic Training Center, and numerous sports and fitness organizations.

96.      Numerous fitness, exercise, and training organizations exist in Colorado Springs, which employ many professionals qualified to create fitness programs designed to improve health and fitness of members.

97.     Anticipating that the PAT testing would eliminate some women from the Colorado Springs Police Department, the Department hired Human Performance Systems, Inc., an organization operating out of the State of Maryland, to create the PAT testing protocol.

98.     Human Performance Systems, Inc.'s  Director, Deborah Gebhardt,  is well known

nationally for testifying in sex discrimination lawsuits for law enforcement agencies and

fire departments.

99.    The PAT tests selected and administered by the Colorado Springs Police

Department were not designed to test for the minimum physical capacity required to

perform a police officer's essential job duties.

100.    If the purpose of the physical abilities testing administered by the Colorado

Springs Police Department was to improve the overall physical fitness of the police

force, then different cut-off scores, normed for different age groups and sexes, would

have been established.

101.    If the purpose of the physical abilities testing administered by the Colorado

Springs Police Department was to improve the overall physical fitness of the police

force, then a fitness program could have been developed by any number of experts

from Colorado Springs whose profession is to develop fitness programs.

102.    The PAT testing protocols adopted by the Colorado Springs Police Department

were developed in order to eliminate from the workforce a large number of women over

forty and defend the federal discrimination lawsuit which the Colorado Springs Police

Department knew would be the result of its actions.

103.    The BEEP test measures cardiovascular fitness.

104.    The Colorado Springs Police Department could have adopted other, equally

effective cardiovascular fitness tests in order to achieve its stated governmental

objective of improving the cardiovascular fitness of police officers, which do not

disproportionately impact women over forty.

105.    Alternatively, the Colorado Springs Police Department could have adopted age

14

and gender normed cut-off scores for the BEEP test.

106.   The IAT (Illinois Agility Test) measures anaerobic power.

107.   The Colorado Springs Police Department could have adopted other, equally effective tests of anaerobic power in order to achieve its stated governmental objective of improving  fitness of police officers, which do not disproportionately impact women over forty.

108.   Alternatively, the Colorado Springs Police Department could have adopted age and gender normed cut-off scores for the IAT.

### Disparate Impact on Women over Forty

109.   The Colorado Springs Police Department's PAT testing policy adversely impacts women over forty.

110.   Based on information made available by the Colorado Springs Police Department prior to filing suit, male officers who took the PAT failed to pass at a rate of 2.2 percent.

111.   Based on information made available by the Colorado Springs Police Department prior to filing suit, females officers over forty who took the PAT test initially failed to pass at a rate of 38 percent.

112.   The disparity is statistically significant and demonstrates adverse impact.

113.   Each Plaintiff has failed the PAT on at least one occasion, resulting in humiliation, disciplinary action, loss of compensation, and removal of duties.

114.   The imposition of humiliation, disciplinary action, loss of compensation, and removal of duties on the Plaintiffs for failing to pass the PAT did not serve any important governmental objective.

### Correlation to Important Elements of Work Behavior

15

115.    The Colorado Springs Police Department's PAT does not achieve any important governmental objective because it is not sufficiently correlated to job performance to justify its use for retention and disciplinary purposes.

116.    The PAT tests as administered for retention of incumbent officers operates in isolation from other performance criteria, which are evaluated by the department semi-annually including responsibility, commitment, responsiveness, teamwork, written and verbal communication, initiative, problem solving, and decision making.

117.    In addition, the Colorado Springs Police Department correlated the PAT against performance criteria consisting of peer ratings that coworkers or supervisors gave to the physical job performance of officers in a test group.

118.    The use of coworker and supervisor ratings were subjective and probably introduced gender bias into the process of correlating the PAT to important elements of job performance.

119.    Industrial psychology research literature documents that women receive lower job performance ratings than men even when there is no objective evidence of lesser job performance.

**The PAT is not Substantially Related to Achievement of Important Governmental Objectives**

120.    The important governmental objectives, which have been announced by Chief Peter Carey as the justification for use of PAT testing for disciplinary and job retention purposes are 1) the creation of a "culture of fitness" within the Colorado Springs Police Department; 2) a reduction in work related injuries within the Colorado Springs Police Department; and 3) increasing the longevity of employment of police officers with the

16

Colorado Springs Police Department.

121.    If the phrase "creation of a culture of fitness" means the goal of the PAT is to increase the health or fitness of police officers employed by Colorado Springs Police Department, then the PAT fails to achieve that stated goal because it cannot be shown that use of unnormed passing scores for fitness tests improves health or fitness of police officers more effectively that use of cut-off scores normed for age and sex.

122.    Conversely, the use of cut-off scores normed for age and sex more effectively increases the health and fitness of more officers than the use of unnormed scores.

123.    If the phrase "creation of a culture of fitness" means the goal of the PAT is to reduce workplace injuries for police officers employed by Colorado Springs Police Department, then it cannot be shown that use of PAT testing leading to discipline and termination of employment for a target group of women over forty is more effective than the use of PAT testing, which has consequences other than discipline and termination of employment of a target group.

124.    The PAT testing implemented by the Colorado Springs Police Department has resulted in at least a dozen injuries to officers who were injured while preparing for or taking the PAT test, including two injuries leading to surgeries.

125.     Most injuries suffered while preparing for the PAT have resulted in light duty assignments for the injured officers.

126.    It cannot be shown that any injuries have been prevented or will be prevented by PAT testing as implemented by the Colorado Springs Police Department.

127.    Use of PAT testing as implemented by the Colorado Springs Police Department has resulted in at least two officers ending their careers with the Colorado Springs

17

Police Department and will necessarily result in early medical retirements for numerous officers in the future.

128.   It cannot be shown that any equal number of officer's careers have been or will be extended by PAT testing as administered by the Colorado Springs Police Department.

129.   The use of  PAT testing for disciplinary purposes and retention of officers does not serve any important governmental objective and is not substantially related to the achievement of any important governmental objective.

114.   The fact that the use of PAT testing for discipline and retention by the Colorado Springs Police Department is not substantially correlated to any important governmental objective is demonstrated by the following facts:

a)    Few law enforcement agencies nationwide, and no major police departments in Colorado, administer a PAT to incumbent police officers for purposes of discipline or retention.

b)    Of those few police departments that administer a PAT to incumbent police officers fewer still use a single cut-off score for all officers regardless of sex or age.

c)    Upon information and belief, no major police department in the United States uses a PAT, which is not normed for sex and age, as a condition of continued employment for incumbent police officers.

d)    The fact that hundreds of major police departments are able to operate efficient police departments without utilizing a PAT as a condition of employment demonstrates that the PAT as adopted by the Colorado

18

Springs Police Department is not required in order to achieve any

important governmental objective.

**Disciplinary Action Based on Failure to Pass Physical Abilities Test**

130.   The Colorado Springs Police Department adopted a policy of removing job

duties from officers who failed the PAT.

131.   As a result of this policy each of the Plaintiffs has suffered a loss of wages, the

ability to perform their jobs, opportunity for advancement, and humiliation and emotional

distress.

132.   The Colorado Springs Police Department adopted a policy that officers who were

unable to pass the PAT or were unable to take and pass the PAT because of injury

could not:

a)   Wear uniforms or any insignia identifying them as police officers;

b)   Carry a weapon unless it was concealed;

c)   Perform any work outside of police headquarters or substations, which

could result in suspect contact;

d)   Perform as training officers;

e)   Work any extra duty or overtime;

f)   Be eligible for transfers, reassignments or promotion; and

g)   Receive regular pay increases granted to all employees not subject to a

performance improvement plan.

133.   This disciplinary policy is not necessary to achieve any important governmental

objective  as is shown by the fact that:

a)   The Colorado Springs Police Department allows officers who are

performing limited duty because of an injury to perform all duties from which they are not medically restricted from performing;

b)      Plaintiffs were never medically restricted from performing any of their job duties;

c)      Removal of job duties and benefits from the Plaintiffs following a failure to pass a PAT test was never based on medical necessity and was never required by business necessity;

d)      It has not been the policy of the Colorado Springs Police Department to remove the above duties from officers who fail to achieve passing scores on the firing range;

e)      It has not been the policy of the Colorado Springs Police Department to remove the above duties or privileges from officers who are on performance improvement plans for behavior such as aggression; and

f)      The individual PAT tests are not tests of an officer's ability to perform essential job functions.

## Motive or Intent to Discriminate

134.    Women have historically been underrepresented in law enforcement and have been particularly underrepresented in the Colorado Springs Police Department.

135.    At the present time, women constitute approximately twelve to thirteen percent of the total police officers employed by the Colorado Springs Police Department.

136.    This underrepresentation results, in part, from a historic failure to employ women in numbers that reflect the overall Colorado Springs community.

137.    The Colorado Springs Police Department continues to perpetuate this pattern as

20

women currently represent only a small percentage of police academy graduates.

138.    The adoption of physical standards, such as height, which could not be met by most women,  has in the past resulted in police departments being composed by great majority of male officers.

139.    Historically certain physical abilities tests, such as push-ups, when used as a requirement for admission to police academies, have been found by courts to  adversely impact women applicants and have been held to violate federal law.

140.    In this case, Chief Carey, or those with delegated authority to act on his behalf, selected individual physical abilities tests, such as push-ups, knowing women would score substantially lower on the tests than similarly situated male police officers.

141.    The Colorado Springs Police Department deviated from the established decision-making process for imposition of discipline as set forth in the Sworn Policies and Procedures Manual of the City of Colorado Springs by imposing disciplinary measures upon the Plaintiffs for failing to pass the PAT, including imposition of performance improvement plans.

142.    Until the time the PAT policy was adopted, performance improvement plans were only used for officers who were "performing in an unsatisfactory manner in any critical function of their job . . . ." City of Colorado Springs Sworn PPM Policy and Procedure #24.

143.    The Colorado Springs Police Department deviated from the established decision-making process for imposition of discipline and loss of compensation as set forth in the Sworn Policies and Procedures Manual of the City of Colorado Springs by imposing disciplinary measures upon the Plaintiffs for failing to pass the PAT, including loss of

overtime duty, extra duty, training duties, loss of uniforms, and loss of ability to perform field work.

144.    These deviations did not further any important governmental objective and similar discipline has not been imposed on males who demonstrated unsatisfactory job performance.

145.    The Colorado Springs Police Department abandoned its long standing policy for evaluation of performance of police officers, which formerly included formal evaluation of responsibility, commitment, responsiveness, teamwork, written and verbal communication, initiative, problem solving and  decision making in the established decision-making process, by adopting a policy, which included termination of employment of the Plaintiffs for failing to pass the PAT .

146.    The Colorado Springs Police Department, acting through the Chief of Police or those with delegated authority to act on his behalf, adopted a policy establishing a single cut-off score for the PAT, which was applied to men and women and those over forty while knowing that a single cut-off score would disproportionately impact women over forty.

147.    The PAT adopted by the Colorado Springs Police Department was not designed to be a test of an officer's ability to perform their essential job functions.

148.    The Chief of Police, or those with delegated authority to act on his behalf, knew at the time that they implemented the PAT that it was not designed to be a test of an officer's ability to perform their essential job functions.

149.    The Chief of Police, or those with delegated authority to act on his behalf, adopted and implemented policies, which treated performance on the PAT as an

essential job function while knowing it was only designed to be at best a predictive test of job performance.

150.    The Chief of Police, or those with delegated authority to act on his behalf, punished the Plaintiffs by adopting and implementing policies, including removal of duties and privileges from those officers who did not pass the PAT test, which were intended to humiliate the Plaintiffs and were not designed to further any important governmental objective and could only be justified if the officer was unable to perform essential job functions.

151.    The Chief of Police, or those with delegated authority to act on his behalf, adopted policies imposing disciplinary measures, including performance improvement plans, on officers who failed to pass the PAT test knowing that those failing to pass the PAT test would be disproportionately women over forty.

152.    The sequence of events leading to the adoption of the PAT policy included receipt of a validation report prepared by Human Performance Systems, Inc., which was provided to the Chief of Police, or those with delegated authority to act on his behalf, in December, 2011.

153.     The validation report described the relative performance of males and females, as well as different age groups, on the individual tests selected for the PAT.

154.    The validation report demonstrated that the PAT would disproportionately subject female police officers over forty to disciplinary measures.

155.    After the Chief of Police, and those delegated to act on his behalf, knew that the majority of those who failed to pass the PAT were women officers over forty they adopted humiliating and punitive measures for enforcing the PAT policy, including the

adoption of punitive measures on December 15, 2014.

156.    The adoption of humiliating and punitive measures to enforce the PAT test including  prohibitions against wearing a uniform, prohibition against carrying their weapons, a prohibition against responding to a crime scene or performing investigative work, and a prohibition against any assignment that could require the use of physical force.

157.     The Colorado Springs Police Department adopted these humiliating and punitive measures with the intent to humiliate female officers because of their sex as demonstrated by the fact that the Colorado Springs Police Department only adopted these punitive measures as a policy of the Police Department after it knew that the majority of those who failed were women over forty.

158.    The punitive measures adopted by the Colorado Springs Police Department were unnecessary, deliberately adopted to humiliate women over forty, and were not justified by any important governmental objective because prior to December 14, 2014 officers who had medical restrictions as the result of an injury were not subjected to a similar policy, were allowed to wear their uniforms, carry weapons, and work in the field.

159.    Similarly, male police officers who had DUI convictions and were unable to drive were allowed to wear their uniforms.

160.    Additionally, male police officers who had domestic violence charges against them were allowed to carry their weapons.

161.    These facts further evidence that the punitive measures described above were unnecessary, were not justified by any important governmental objective, and were implemented for the purpose of humiliating the Plaintiffs because of their sex.

24

162.   Prior to December 14, 2014 officers who had medical restrictions as the result of an injury were not subjected to a similar policy, were allowed to wear their uniforms, carry weapons and work in the field

163.   Further evidence that punitive measures such as those described above were unnecessary, were not justified by any important governmental objective, and were implemented for the purpose of humiliating the Plaintiffs is evidenced by the fact that police officers who failed to achieve a passing score on the firing range were allowed to wear their uniforms, respond to  crime scenes, perform investigative work, and were not barred from any assignment that could require the use of physical force.

164.   Commander Thor Eells has been the person who has been the proponent and motivating force behind the adoption of the PAT policy by the Colorado Springs Police Department.

165.   Commander Eells who is a close associate of Chief Carey and a member of the decision making body which selected the individual PAT tests has referred to women police officers as "Shamus" and "Smurfs" on multiple occasions.

166.   All of the foregoing circumstances, including historical background, sequence of events leading to adoption of the policy, departure from established decision making process, and statements of a member of the decision making body establish that the adoption and implementation of the PAT policy had a discriminatory purpose and the Colorado Springs Police Department chose a course of action because of the adverse effects it would have on women police officers over forty.

**First Cause of Action- Denial of Equal Protection**
**42 U.S.C. § 1983**

167.    All previous paragraphs are incorporated herein.

168.    All relevant actions taken by the Chief of Police and those with delegated authority to act on his behalf were taken under color of law.

169.    The Physical Abilities Testing policy adopted and implemented by the Chief of Police and those with delegated authority to act on his behalf discriminated against the Plaintiffs because of sex and age.

170.    Based on the totality of the circumstances, the Physical Abilities Testing protocol implemented by the Colorado Springs Police Department was adopted with an intention to target women police officers over forty, humiliate them, discipline them, and ultimately terminate their employment with the Colorado Springs Police Department.

171.    The Physical Abilities Testing protocol as described above was not designed to nor is it likely to achieve important governmental objectives such as achieving increased fitness for a substantial number of police officers, reduce work related injuries, or increase the longevity of police officers.

172.    The Colorado Springs Police Department does not have a rational basis for implementing its discriminatory Physical Abilities Testing protocol and no reasonable grounds exist for implementing a Physical Abilities Testing protocol which substantially discriminates against female police officers who are over forty years old.

173.    In the absence of business necessity and the fact that the Colorado Springs Police Department does not have an exceedingly persuasive justification for its PAT protocol the application of the PAT policy to the Plaintiffs has been and is a violation of their right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

174. The Colorado Springs Police Department's Physical Abilities Testing protocol cannot be justified by reference to some upright governmental purpose.

175. The Physical Abilities Testing protocol as implemented by the Colorado Springs Police Department was not and is not necessary to achieve any important governmental objective because the protocols have not been proven to reduce injuries or improve fitness.

176. Plaintiffs have suffered damages as the result of the purposeful discrimination against them and the implementation of Physical Abilities Testing protocols which targeted them for discipline and termination because of their sex and age including loss of pay, loss of pay increases, loss of benefits, humiliation and emotional distress.

## Second Cause of Action- Denial of Due Process
### 42 U.S.C. § 1983

177. All previous paragraphs are incorporated herein.

178. According to the Rules of the Colorado Springs Civil Service Commission for the Municipal Police and Fire Forces a police officer's pay may only be reduced for cause.

179. The Rules of the Colorado Springs Civil Service Commission for the Municipal Police and Fire Forces provide: "Any employee may be . . . reduced in compensation . . . for unsatisfactory job performance, harassment, workplace violence, inefficiency, dishonesty, drunkenness, use of illegal drugs, immoral conduct, insubordination, neglect of duty, unexcused failure to report to duty, any violations of the provisions of the Charter, City Ordinances, the Civil Service Policies and Procedures manual, the Rules of the Police and Fire Departments or Rules of the Civil Service Commission, any other failure of good behavior; any other act of misfeasance, malfeasance or nonfeasance in

27

office or any other just and reasonable cause . . . ." Rule 8.1.

180.    Prior to the Implementation of the PAT testing protocols and Plaintiffs' failure to pass the PAT tests, each of the Plaintiffs had been receiving one or more of the following forms of compensation: paid overtime, payment for extra duty, use of a take home police vehicle, paid parking, additional pay for performing as a training officer, or annual pay increase afforded to all sworn personnel not subject to disciplinary action.

181.    Following the Implementation of the PAT testing protocols and Plaintiffs' failure to pass the PAT tests, all of the above listed compensation was taken away from the Plaintiffs and their compensation was thereby reduced.

182.    As Plaintiffs' compensation could only be reduced for cause they possessed a property interest in their compensation that was protected by the procedural provisions of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

183.    Plaintiffs requested a post-deprivation hearing on the reduction in their compensation on March 27, 2015.

184.    Plaintiffs were denied a hearing on April 14, 2015.

185.    Had Plaintiffs been afforded a post-deprivation hearing they would have been awarded money equal to their reduction in compensation.

186.    The foregoing actions and omissions of Defendant caused Plaintiffs to suffer past and future pecuniary losses.

187.    The foregoing actions and omissions of Defendant violated Plaintiffs' right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.

## Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief, pursuant to 42 U.S.C. §§ 1983 & 1988; and Fed. R. Civ. P. 54:

a. A preliminary and permanent  injunction barring enforcement of PAT testing protocols as described above to deny Plaintiffs continued employment, to impose disciplinary measures or to reduce their compensation;

b. Pecuniary and compensatory damages including payment for loss of overtime pay, extra duty pay, regular pay increase, including consequential damages;

c. Damages for humiliation and emotional distress;

d. Pre- and post-judgment at the highest rate;

e. Costs and reasonable attorneys fees; and

f. All other legal or equitable relief to which Plaintiffs are entitled.

## Jury Demand

Plaintiffs request a jury on all matters triable to a jury.

Respectfully submitted this 30th  day of April, 2015.

CORNISH & DELL'OLIO, P.C.


Donna Dell'Olio, # 10887
Ian D. Kalmanowitz, # 32379

Cornish & Dell'Olio, P.C.

431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
(719) 475-1204
FAX (719) 475-1264
Email: ddellolio@cornishanddellolio.com

ikalmanowitz@cornishanddellolio.com

Attorneys for Plaintiffs